**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-09-0737-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Emilia Fernandez (024), Anthony Lee Thomas (059), and Diana Padilla Fletcher (026), | |
| Defendants. | |

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2009, a grand jury in the District of Arizona returned a 130-count indictment (doc. # 3) against approximately 65 defendants based on their alleged individual involvement in a wide-ranging federal student loan fraud. The indictment alleges that the primary defendant, Halton, initiated a scheme in which some of the named defendants recruited others as "straw students" to apply for and receive federal student loans. Each of the defendants is charged with fraudulently obtaining federal student loans in amounts ranging from several thousand dollars to over $16,000, and all were initially charged with felony violations of 20 U.S.C. § 1097(a), which provides:

> Any person who knowingly and willfully embezzles, misapplies, steals, obtains by fraud, false statement, or forgery, or fails to refund any funds, assets, or property provided or insured under this title or attempts to so embezzle, misapply, steal, obtain by fraud, false statement or forgery, or fail

> to refund any funds, assets, or property, shall be fined not more than $ 20,000 or imprisoned for not more than 5 years, or both, except if the amount so embezzled, misapplied, stolen, obtained by fraud, false statement, or forgery, or failed to be refunded does not exceed $ 200, then the fine shall not be more than $5,000 and imprisonment shall not exceed one year, or both.

According to its recent Notice to Court Regarding the Government's Intended Resolution of this Case (doc. # 763), the government now intends to enter into plea agreements with approximately 50 defendants who played relatively minor roles in the scheme and have relatively minor criminal histories. In exchange for a dismissal of the felony charge under 20 U.S.C. § 1097(a), the agreements require the defendants to plead guilty to a violation of 20 U.S.C. § 1097(a) involving an amount that "does not exceed $200," a Class A misdemeanor. *See* 18 U.S.C. § 3559(a)(6). Defendants Anthony Lee Thomas and Emilia Fernandez were sentenced on November 16, 2009, and Defendant Diana Padilla Fletcher was sentenced on December 7, 2009, pursuant to such agreements. Their particular agreements (doc. ## 939, 940, 1020) call for restitution in the true amounts fraudulently obtained by each and stipulate to a sentence of probation of up to three years with no condition for incarceration. In light of the stipulated loss amounts in the agreements, the advisory Sentencing Guidelines ranges are the same whether the offense under 20 U.S.C. § 1097(a) is a felony or a misdemeanor.

In considering whether to accept or reject these plea agreements, and all others in these cases, the Court has considered and will consider all pertinent factors. This memorandum addresses whether the Court may reject the misdemeanor plea agreements because there is no basis in fact for the conclusion that the amount "does not exceed $200." The Court concludes that under Ninth Circuit authority it may not reject the plea agreements solely for that reason, as the government has near absolute discretion in pure charge bargaining that does not affect the sentence. On a case by case basis, however, the Court may reject a plea agreement if the stipulated sentence does not otherwise reflect the gravity of the offense conduct or is not otherwise an appropriate sentence.

## II. ANALYSIS

### A. The Proposed Plea Agreements are Charge Agreements.

Depending on what the government seeks to achieve, it may choose to negotiate any one of several types of plea agreements. The primary distinction is between a "charge agreement," in which the government agrees to reduce or to dismiss certain charges, and a "sentence agreement," in which the government agrees to, or agrees not to oppose, a particular sentence or sentencing range. *See United States v. Miller*, 722 F.2d 562, 564 (9th Cir. 1983). A plea agreement in which the government promises to reduce the charge from a felony to a misdemeanor violation of a particular criminal statute may properly be characterized as a charge agreement if the misdemeanor is a lesser-included offense of the felony.

One offense is a lesser-included offense of another if the elements of the former offense are a subset of the elements of the latter. *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932) (the test for whether two statutes punish separate offenses "is whether each provision requires proof of a fact which the other does not."). An offense is lesser-included only if it is impossible to commit the greater offense without also committing the lesser. The text of the two criminal provisions must be compared to determine whether the elements of one offense are a subset of the other. *Davenport*, 519 F.3d at 944.

Here the elements of the misdemeanor offense in 20 U.S.C. § 1097(a) are a subset of the elements of the felony. A person is guilty of a felony violation of 20 U.S.C. § 1097(a) if that person (1) knowingly and willfully (2) does or attempts to embezzle, misapply, steal, obtain by fraud, false statement, or forgery, or fail to refund (3) any funds, assets, or property provided or insured under that title. The misdemeanor portion of 20 U.S.C. § 1097(a) requires proof of these same three elements. The only difference is that under the misdemeanor, the punishment is less severe if the amount embezzled, stolen, or obtained by fraud "does not exceed $200." Though we find no authority construing this statute, under analyses of similar statutes, the "does not exceed $200"

clause is an element of the punishment for the offense, not an element of the offense itself. *See Commonwealth v. Kelly*, 24 Mass. App. Ct. 181, 183, 507 N.E.2d 777, 778 (1984) (concluding from the face of the statute defining larceny that the value of property stolen was an element of the punishment, not an element of the offense itself); *Ex parte Scott*, 460 So. 2d 1371, 1375 (Ala. 1984) (accepting as correct the contention that third degree theft, defined as theft of property that does not exceed $100, is a lesser-included offense of second degree theft, defined as theft of property exceeding $500 but not exceeding $2,500). Because the elements of the misdemeanor are a subset of the elements of the felony, the misdemeanor is a lesser-included offense of the felony. Therefore, the proposed plea agreements in this case are charge agreements.

### B. Extent of Judicial Discretion to Reject Charge Agreements

Deciding what charges to press is a prosecutorial function, but sentencing is a judicial function. *See Miller*, 722 F.2d at 564 (noting that the selection of charges is an executive choice, while sentencing is a judicial choice). Therefore, a prosecutor's motion to dismiss charges under Fed. R. Crim. P. 48 must be granted unless "clearly contrary to manifest public interest." *Id.* at 566; *United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2002). Plea agreements, on the other hand, often reflect an interplay of charging and sentencing. *See Miller*, 722 F.2d at 564; *see also United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977) (noting that because charges dismissed in a plea agreement often carry more severe punishment than the charge to which the defendant is pleading, a charge agreement is an "indirect effort to limit the sentencing power" of the court). Therefore, district courts have broader discretion to reject a plea agreement than they have to deny a motion to dismiss. *Miller*, 722 F.2d at 564.

This judicial discretion to reject plea agreements is reflected in Rule 11 of the Federal Rules of Criminal Procedure, which provides that to the extent a plea agreement involves an agreement not to bring charges or to dismiss charges, or an agreement to a specific sentence or sentencing range, the court "may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P.

11(c)(3)(A). Although Rule 11 gives courts seemingly uniform discretion to reject plea agreements regardless of the type of agreement, an early Ninth Circuit decision drew a distinction between judicial discretion over charge agreements and judicial discretion over sentence agreements. *See Miller*, 722 F.2d at 564. Because prosecutorial discretion in charging decisions is "almost absolute" and because charge agreements "raise the possibility of improper judicial influence over charging," courts cannot apply categorical rules in determining whether to reject a charge agreement. *Id.* at 564-65. As the Ninth Circuit succinctly put it in *Miller*, "the existence of discretion requires its exercise." *Id.* Therefore, "courts must review individually every charge bargain placed before them" and must state the reasons for a rejection, bearing in mind that courts "should be wary of second-guessing prosecutorial choices." *Id.* at 565-66.

In 1987, after *Miller*, the U.S. Sentencing Guidelines were enacted. Section 6B1.2(a) of the U.S. Sentencing Guidelines provides:

> In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

The Commentary to U.S.S.G. § 6B1.2 explains that "when the dismissal of charges or agreement not to pursue potential charges is contingent on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose [a] sentence is implicated . . . ." In an early discussion of U.S.S.G. § 6B1.2, the Ninth Circuit acknowledged that "Congress wanted sentencing judges to review charge-reduction plea agreements to ensure that such agreements do not result in undue leniency or unwarranted sentencing disparities." *United States v. Fine*, 975 F.2d 596, 601 (9th Cir. 1992) (internal quotes omitted). The purpose of U.S.S.G. § 6B1.2 is "to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines." *Id.*

On three occasions since *Fine*, the Ninth Circuit has spoken to the limits of judicial discretion to reject charge agreements, but without mention of U.S.S.G. § 6B1.2. *See*

*Morgan v. United States Dist. Court (In re Morgan)*, 506 F.3d 705, 711-12 (9th Cir. 2007); *Vasquez-Ramirez v. United States Dist. Court*, 443 F.3d 692, 696 (9th Cir. 2006); *Ellis v. United States Dist. Court (In re Ellis)*, 356 F.3d 1198, 1200 (9th Cir. 2004). In *Morgan*, the Ninth Circuit held that district courts are now obligated to "provide individualized reasons for rejecting [a sentence] agreement, based on the specific facts and circumstances presented." 506 F.3d at 711-12. However, the court reiterated the "different interests" implicated by charge agreements as opposed to sentence agreements, noting that the government "retains 'almost absolute' discretion in charging decisions." *Id.* at 711 (citing *Miller*, 722 F.2d at 564).

In both *Vasquez-Ramirez* and *Ellis*, the primary issue was not whether a district court had discretion to reject a charge agreement, but rather whether it had discretion to reject or vacate a naked guilty plea after rejecting a plea agreement. Those decisions are therefore seemingly inapposite to the case at hand. However, both opinions comment on the separation of powers between the judiciary and the executive in rejecting charge agreements. In *Ellis*, the district court had accepted a guilty plea to a lesser charge of second degree murder but later rejected the plea agreement as too lenient. 356 F.3d at 1202. Instead of allowing the defendant to withdraw his guilty plea, the district court immediately arraigned the defendant on the pending first degree murder indictment and refused to allow a renewed plea agreement. *Id.* at 1202-03. The Ninth Circuit concluded that the district court had impermissibly vacated the defendant's guilty plea and reinstated the original indictment. *Id.* at 1200. The court observed that the plea agreement included both a reduced charge and reduced sentence, which "implicat[ed] both judicial and executive decisionmaking." *Id.* at 1209. It was within the district court's discretion to reject the plea agreement's sentence, but its "decision that the second degree murder charge itself was too lenient . . . intruded into the charging decision, a function 'generally within the prosecutor's exclusive domain.'" *Id.* (citing *Miller*, 722 F.2d at 565). The court quoted *Miller* extensively, reiterating that courts should be wary of second-guessing

charging decisions because courts do not know the best allocation of prosecutorial resources or what charges are meritorious. *Id.* at 1210.

In *Vasquez-Ramirez* the Ninth Circuit held that a district court functionally "accepts" an unconditional guilty plea when it meets the requirements of Fed. R. Crim. P. 11(b). 443 F.3d at 694-95. Rejection of a plea agreement entitles the defendant to withdraw his guilty plea. *Id.* at 697. That acceptance of the guilty plea to the lesser charges would require too lenient a sentence is "just happenstance," and the judge's sentencing discretion "will be cabined only by the prosecutor's decision regarding which charges to pursue," which is a strictly executive function. *Id.* at 698. The court also cited *United States v. Robertson*, 45 F.3d 1423 (10th Cir. 1995), for the proposition that "courts should be wary of interfering with prosecutorial discretion." *Vasquez-Ramirez*, 443 F.3d at 698 n.6. In *Robertson*, the Tenth Circuit stated that "while district courts may reject charge bargains in the sound exercise of judicial discretion, concerns relating to the doctrine of separation of powers counsel hesitancy before second-guessing prosecutorial choices." 45 F.3d at 1438.

Yet there is tension within *Vasquez-Ramirez*. The court further noted that its reading of Rule 11 was "consistent with the caselaw of other circuits, many of which have emphasized the broad discretion of district judges to reject plea agreements . . . ." *Vasquez-Ramirez*, 443 F.3d at 699. All the cases cited by the *Vasquez-Ramirez* court affirmed a rejection of a charge agreement by the district court. *See United States v. Smith*, 417 F.3d 483, 487 (5th Cir. 2005) (affirming both Fed. R. Crim. P. 11 and U.S.S.G. § 6B1.2 as bases for judicial authority to reject a charge agreement); *United States v. Gamboa*, 166 F.3d 1327, 1330-31 (11th Cir. 1999) (affirming U.S.S.G. § 6B1.2 as a basis for judicial authority to reject a charge agreement); *United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985) (affirming Fed. R. Crim. P. 11 as a basis for judicial authority to reject a charge agreement); *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977) (affirming Fed. R. Crim. P. 11 as a basis for judicial authority to reject a charge agreement). The best reconciliation of the Ninth Circuit authority is that district courts

may not reject "pure" charge agreements that raise no concerns with the adequacy of the sentence. Where charge agreements do implicate the sentencing function, they may be rejected under the authority of U.S.S.G. § 6B1.2 after giving all due deference to any legitimate prosecutorial interests entailed in the specific plea agreement.

### C. Factors to Consider

Although Rule 11 of the Federal Rules of Criminal Procedure allows a district court to reject a plea agreement, it provides no criteria for the acceptance or rejection of an agreement. Therefore, the inquiry is left to the discretion of each district court judge. *See Bean*, 564 F.2d at 703. An important factor to consider is whether the plea offense adequately reflects the seriousness of what the government can prove beyond a reasonable doubt. *See United States v. Enquist*, 745 F. Supp. 541, 542-43 (N.D. Ind. 1990). Other pertinent factors include the prosecutorial interest in bargaining for the defendant's truthful testimony against another defendant, the interest in conserving prosecutorial resources, and, to a much lesser extent, whether the defendant's conduct seems deserving of the harsh "collateral consequences" accompanying a felony conviction. *See United States v. Noble*, 653 F.2d 34, 36 (1st Cir. 1981); *United States v. Torres-Echavarria*, 129 F.3d 692, 696 (2d Cir. 1997).

In *Noble*, a pre-Guidelines case, the defendant initially pled not guilty to a felony marijuana conspiracy charge but later agreed to plead guilty to misdemeanor possession, with dismissal of the felony charge. 653 F.2d at 35. The district court rejected the plea agreement and the appellate court affirmed. *Id.* at 37. The government's primary reasons for reducing the charge were that the defendant had no prior record and had played a minor role in the conspiracy. *Id.* at 35. The court gave little weight to these concerns, noting that the government could prove beyond a reasonable doubt that the defendant was in fact guilty of the felony with which he had been charged. *Id.* at 36. For the same reason, little weight was given to the harsher "collateral consequences" of a felony conviction compared to a misdemeanor conviction. *Id.* The court emphasized the absence of legitimate prosecutorial interests, including the need to obtain evidence against

- 8 -

another suspect, the desire to avoid prosecuting a weak case, or the general interest in conserving prosecutorial resources. *Id.* at 37. The plea agreement was "intended only to control sentencing, a matter ordinarily within the discretion of the court." *Id.*

In *Torres-Echavarria*, a post-Guidelines case, the defendant was initially indicted for illegal re-entry by an alien convicted of an aggravated felony, but agreed both to plead guilty to the lesser-included offense of illegal entry and to be deported so as to "save the Government the trouble of instituting deportation proceedings." 129 F.3d at 694. The district court rejected the plea agreement because the lesser-included offense was too lenient and because there were no significant prosecutorial interests justifying the charge reduction. *Id.* at 695. The appellate court affirmed, noting that a "prosecutor's proposal to dismiss a claim . . . in consideration of a plea of guilty to some other offense . . . implicates core judicial functions." *Id.* at 697.

Therefore, the factors, both strong and weak, to consider in determining whether to accept or reject the agreement may be summarized as follows:

(1)  Does the plea offense adequately reflect the seriousness of what the government can prove beyond a reasonable doubt?

(2)  Does the government have an interest in bargaining for the defendant's truthful testimony against another defendant?

(3)  Does the government have an interest in conserving prosecutorial resources?

(4)  To a lesser extent, is the defendant's conduct deserving of the harsh "collateral consequences" of a felony conviction?

### D. Application

In this case, the government seeks to allow certain defendants to plead guilty to the misdemeanor offense of fraudulently obtaining federal student loan funds in an amount that does not exceed $200 despite the fact that all defendants obtained funds well in excess of $200. Probation of up to three years with no condition for incarceration is the stipulated sentence. In its Notice to Court Regarding the Government's Intended Resolution of this Case (doc. # 763), the government cites three cases in which lesser-included plea

agreements under 20 U.S.C. § 1097(a) were accepted, but none of them offers any analysis or defense of the plea agreement. In *United States v. Ranum*, 96 F.3d 1020, 1021 (7th Cir. 1996), the defendant was allowed to plead guilty to a misdemeanor violation of 20 U.S.C. § 1097(a) even though he had obtained federally-insured loans in the amount of $7,586. However, acceptance of the plea agreement was not at issue in *Ranum*. The sole issue on appeal was "whether intent to deceive the Government is an essential element of the crime of making a false statement under 20 U.S.C. § 1097(a)." *Id.* at 1024. There is little help in the government's other two cases, *United States v. Bibbs-Meeks*, No. 01-CR-840 (N.D. Ill. Nov. 2, 2006), and *United States v. McStallworth*, No. 07-CR-10057 (D. Kan. Jul. 25, 2007), where lesser-included plea agreements under 20 U.S.C. § 1097(a) were accepted without discussion. No case has been found where the appropriateness of accepting a 20 U.S.C. § 1097(a) lesser-included misdemeanor plea agreement was discussed.

In the circumstances of each of these three cases, the factors favor acceptance of the plea agreements. The most important judicial concern is whether the misdemeanor pleas "adequately reflect the seriousness of the actual offense behavior," U.S.S.G. § 6B1.2(a), when (1) there is no basis in fact for the conclusion that the amount "does not exceed $200," (2) the government would have no greater difficulty in proving the true loss amounts beyond a reasonable doubt than the fictive $200, and (3) Congress itself determined that crimes under the statute involving more than $200 are felonies. In light of the stipulated loss amounts, the advisory Sentencing Guidelines ranges are the same whether the offense under 20 U.S.C. § 1097(a) is a felony or a misdemeanor, and probation is within the applicable Sentencing Guidelines ranges. For reasons appearing in the record and that need not be elaborated here, the Court concludes that probation of three years with no condition for incarceration is an appropriate sentence for Defendants Anthony Lee Thomas, Emilia Fernandez, and Diana Padilla Fletcher, whether the offense of conviction is a felony or a misdemeanor. A court's authority on whether the plea agreements "adequately reflect the seriousness of the actual offense behavior" is played out when the sentences adequately reflect the behavior, whether or not the charge does.

Because these plea agreements raise no concerns with the sentence, judicial oversight of the agreements is largely exhausted.

To the extent any judicial concern with sentencing remains, it is counterbalanced by the government's articulated and legitimate reasons for the misdemeanor/probation plea agreements in these cases. These defendants have agreed to cooperate and testify truthfully against other defendants who the government contends are far more culpable. The government also credibly voices a need to conserve prosecutorial resources by resolving some 50 cases with "minimal additional effort or costs."

All that remains is whether people who have in fact committed a felony should be charged and tainted with a felony rather than a misdemeanor. The government concludes that the collateral consequences of a felony conviction would be overly harsh for these defendants. That is within the prerogative of the executive branch of government where the sentence itself passes judicial scrutiny. Because in these cases there is no sentencing difference between a felony and a misdemeanor conviction under 20 U.S.C. § 1097(a), these three plea agreements reduce to pure charge bargains. On what charges to pursue, the government is accountable and the court is silent.

### III. CONCLUSION

In the circumstances of their cases, the plea agreements of Defendants Anthony Lee Thomas, Emilia Fernandez, and Diana Padilla Fletcher are accepted because the stipulated sentences of up to three years' probation would be appropriate in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), and the advisory Sentencing Guidelines, even if the offense of conviction was a felony under 20 U.S.C. § 1097(a). The judicial sentencing purposes having been satisfied, the Court cannot reject the misdemeanor plea agreements for undisputably felony conduct under 20 U.S.C. § 1097(a) without invading the prosecutorial authority of the executive branch of government.

DATED this 11th day of December, 2009.

_____
Neil V. Wake
United States District Judge